CATHARINE HOUSTON'S EXR. et al. *v.* JAS. T. NICHOLS et al.

**Attachment — Lien for Rent — Proof — Priority of Liens.**

Where, under an attaching creditor's demand for rent, the produce of the farm and other personal estate on the premises, on which, under the warrant, he had an exclusive lien, were sufficient to satisfy the same, the court did not err in applying so much of the proceeds thereof as was necessary to discharge the attachment debt.

**Same — Creditor.**

An attaching creditor has no lien on a fund derived from the sale of a debtor's property, unless it is derived from a sale of property on which his attachment had been levied.

**Affidavit — Proof.**

An attachment, without the prescribed affidavit, will be discharged. And where the evidence shows by a preponderance of the proof that the grounds of the attachment are not sustained, it will be dismissed.

APPEAL FROM HARRISON CIRCUIT COURT.

April 23, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

In the fall of 1861, actions were instituted in the Harrison Circuit Court by appellants and others claiming to be creditors of James T. Nichols, against him, with attachments against his estate, on the alleged ground that he was so concealing himself that a summons could not be served upon him. These attachments were levied upon various articles of personal property, and some of them were levied on the same articles; but of these liens, it will be necessary to speak more fully hereafter.

Larkin Garnett claimed that said Nichols was indebted to him in the sum of $516, for rent due the 1st of October, 1861, and sued out his distress warrant, which was levied upon a considerable portion of the personal estate, the greater part of which was sold to satisfy his demand; the propriety of that sale, and the appropriation of the proceeds to the payment of that debt were not seriously controverted in the court below, and may be regarded as acquiesced in.

On the 8th of May, 1862, after appellants' attachment had been levied, and the property sold by the master, under an interlocutory order of court, except that part which was set apart for the use and support of the family, and the two slaves, mentioned in the return of the officer, on some of the attachments — Richard Jameson instituted an action in equity in said court against said Nichols, and alleged in substance that he, as the statutory guardian of M. and L. S. Nichols, had obtained a judgment to sell a small tract of land, the estate of his wards, and which was sold for the sum of $997.50; that before the judgment for the sale was rendered he was required to execute a bond with surety in conformity to the law, which he did, with T. V. Dills as his surety, and that the said Jameson had afterward executed a bond to said Dills to indemnify him against loss or danger on account of said suretyship; that said Dills had been sued by the wards on his bonds, and would have the money to pay, and that he, Jameson, would ultimately be compelled to pay the amount to Dills; and he, therefore, sought to make the estate of Nichols responsible to him for the amount, and attached the proceeds of the sales of the personalty in the hands of the receiver, or commissioner, which had not been distributed, on the alleged grounds that Nichols had then been absent from the State more than four months, had voluntarily left Harrison, the county of his residence, and had been absent therefrom for thirty days last past, and during said period of time had been, and continued voluntarily within the so-called Confederate States, or their military lines.

On the filing of this petition, viz.: 8th of May, 1862, an attachment was awarded, and a copy of the order served on John S. Boyd, clerk of the Harrison Circuit Court, and also a notice attached to said order informing him of the funds intended to be attached in said proceedings, and a warning was taken against Nichols, and an attorney appointed to defend for him.

On the 12th of May, 1862, all the appellants except Peck filed an amended affidavit, in which they severally state, that

"James T. Nichols has voluntarily left Harrison county, the county of his residence, and has been absent therefrom for thirty days, and during said period of time has been and continued voluntarily within the so-called Confederate States, or their military lines, and that he has been there as aforesaid without the order, direction, or license of the United

States, or the State of Kentucky, or any authorized officer, or agent, of either of them."

After this amended affidavit was filed, alias attachments were issued in the name of the affiants, and were returned no property found.

All the actions were consolidated, and heard together; before the final hearing the attachments of Cason & Givens, and Henry F. Cromwell, were discharged.

On the 12th day of May, 1862, Felix Ashbrook, who was also an attaching creditor of J. T. Nichols, filed an amended affidavit, conforming to the act approved 23d December, 1861 (*Supp. Rev. Stat., p.* 38).

On the 15th of April, 1863, appellants, respectively, caused an alias summons to issue in their cases against the defendant Nichols, directed to the sheriff of Fayette county, and they were executed on him on the 17th day of the same month.

On the 17th of November, 1865, the consolidated cases were finally heard, and it was adjudged that the petitions of Cason & Givens, and of H. F. Cromwell, be dismissed without prejudice, their attachments having been discharged previously. Judgment was rendered in favor of Garnett for $516, the sum claimed by him for rent with interest from the 1st of October, 1861, and his costs. And then the attachment of Jameson was sustained, priority given him next to Garnett, and the sum of $997.50, with interest from the 8th of May, 1862, until paid, and his costs, ordered to be paid to his personal representative, he having died during the pendency of the action, and the residue of the funds ordered to be paid to appellants and to Felix Ashbrook, and from this judgment the executor of Houston, deceased, Day & Stewart, Redman, Shumate, and Peck have appealed.

As to Garnett's demand for rent, the produce of the farm, and other personal estate on the premises on which, under his warrant, he had an exclusive lien, were sufficient to satisfy the same, consequently the court properly applied so much of the proceeds thereof as was necessary to the discharge of his debt. And whether the court erred to the prejudice of appellants in giving priority to the debt of Jameson's representative is the only remaining question to be disposed of.

As to Houston's executor, his attachment, as the officer's return shows, was levied on two slaves and a lot of accounts; what disposi-

tion was made of said slaves. and the accounts does not appear in this record. Certainly there is no order for the sale of the slaves, nor for the collection, or any disposal, of the accounts. No part of the funds directed to be paid out by the judgment complained of were derived from a sale of any property upon which his attachment was levied, and he has shown no right to the same.

As to Peck, his original attachment was properly discharged for want of an affidavit.

Shumate's attachment was levied on some silver and plated ware, carpet, about fifty barrels of corn in the crib, and a stallion, American Boy. The corn, it may be assumed, was set apart for the use of the family, as the commissioner's report shows that there were seventy-five barrels of corn in the crib set apart for that purpose, and his report does not show that any of the ware or the carpet was sold; to the report of sale made by the commissioner an exception was taken because he had not sold the horse American Boy, which was sustained, and he was ordered to sell said horse on the second Monday in July thereafter. On the 4th of November, 1862, he reported that he did on the 14th of July previously make a sale at $135, but what he sold he failed wholly to state, and the sale was confirmed; from the fact that he was ordered to sell the horse, we presume he did sell him for the sum stated above. And as a part of the property, on which the attachment of Day & Stewart and that of Redman was levied, was not sold under Garnett's distress warrant they should have had priority if the original grounds for their attachments were made out by the proof.

In the bill of exceptions it is stated that Richard Lindsey was introduced and sworn by the plaintiff, who proved that he was appointed sheriff of Harrison county in November, 1861, and shortly afterward process came to his hands in the case of Houston's Executor v. J. T. Nichols, Sol. Redman v. the same, and Day & Stewart and Wm. Shumate against the same,

"that he went to Nichols' house where he resided, and had been residing for some time previously in this, Harrison county, and could not find him; that his family was at home; but if he was there, witness did not see him, although he inquired for him; that witness resides in the county about two miles south of where defendant Nichols resides, and frequently saw him before he got the process in said cases in

his hands. That he did not see Nichols in the county any more at his home until the summer, or early part of the fall, 1862. That Nichols is a farmer by occupation. This being the whole of the testimony introduced upon the issue that defendant Nichols so conceals himself that a summons cannot be served upon him. The court," etc., etc.

This being, as stated, the whole of the testimony to sustain the attachment on the original ground, its insufficiency must be apparent; no facts are stated from which it can be inferred that Nichols' absence was with the intention of obstructing his creditors in the collection of their debts, and, besides, nearly all of the attachments were sued out in October, perhaps a month before the witness was at Nichols' residence, where he was then, whether at home or not he does not pretend to know, and says not a word on the subject.

No error, therefore, is perceived prejudicial to appellants, and the judgment must be affirmed.